Thank you, your honors. Tyler Becker from the Department of Justice on behalf of appellants. May it please the court. Your honors, we've talked a lot about the issues already so I'm gonna continue to going to continue to talk about some of the jurisdictional issues. I do want to address some of the additional things that have occurred in Maddawi. Maddawi's case does not involve the habeas venue issue that Austria's case does, as you are probably aware, but it does involve an issue of how the district court under Mapp v. Reno, which the government the government has contested as good law, but we think even if you even if Mapp v. Reno is, it was pretty the district court should not have released and used its authority to release the petitioner here. The government had evidence that Mr. Maddawi told a gun shop owner that he had considerable firearm experience and used to build modified nine millimeter machine guns and to kill Jews while he was in Palestine. He also told a gun enthusiast he met at a museum in Vermont that he liked guns and liked to kill Jews. We do not think under this, under the requirements to consider whether this person is a safety or security risk under Mapp v. Reno, we do not think he should have been released. I guess I have a question, which is, is Mapp v. Reno really about being a security risk? So Mapp v. Reno says you have substantial questions and also there's extraordinary circumstances that require release to preserve the habeas venue, right? So is it an extraordinary, even if you're not a security risk or even a flight risk, is that an extraordinary circumstance? Well, we certainly don't think it's an extraordinary circumstance to release you pending proceedings. It does need to be something more than that, doesn't it? More than not being a flight risk or a danger. Yes, Your Honor, these are supposed to be extraordinary circumstances to be able to be released under Mapp v. Reno and the government had many, had very many reasons to detain to detain Madawi. And so even if the security risk is part of it, then how do we evaluate that? So, you know, usually we defer to district court factual findings. The district court sort of thought that this wasn't credible, that he was this dangerous. But maybe in this posture, because immigration detention, the government gets more deference. How do we think about that question? Your Honor, we think the government gets a lot more deference than the district court gave. The district court questioned the government's national security justifications and concerns. The district court relied on an FBI, on the fact that the FBI had been made aware of some of these statements and did not bring charges and assumed that that was sufficient to assume that they were not credible as a result of that. And we think that that went way too far. And regardless, given the, given, if he just said, I like to kill Jews or I did it one time or whatever, what would be the basis of the charges anyway? The basis of? Like, what charges could the FBI have brought? Your Honor, that's one of the things that the government is concerned with, with the way the district court did this. The district court didn't really consider that issue of what, you know, what charges he could have brought. Like, they didn't even, the government didn't want to provide all of the security information. At the district court level, but the district court also just assumed that they were not credible as a result without considering, you know, whether there was some sort of hate crime charges or something like that. I get why you argue, and I think with some force, that the district court probably wasn't reasonable to say that because he wasn't charged with anything, the FBI must have concluded there's nothing to this. I mean, that doesn't fly. But I think that the fundamental point is still one that, I mean, these are things that happened, what was it, in 2015 or something, or whatever the years were, and, but there's no allegation of any criminal activity, right? I mean, there is nothing, based on the statements that were reported, even if you agree, the government wouldn't be able to right now proffer any criminal charge that could have been brought on that, unless you have secret evidence, which is fine. The government can say, well, I have secret evidence that for national security reasons, I'm not going to turn over. But I'm not aware of any charges that could be brought based on what was said, criminal charges that could have been brought on what was said, right? Yes, Your Honor, but what we're also saying, what the government is also saying is that there were other potential criminal issues that occurred with Madawi, including he was pulled over and stopped for having a whole Right, so the judge is allowed to say, and maybe it's criminal, nobody ever charged him, so, I mean, and most bail determinations, which judges do every single day, that would be kind of viewed as, frankly, kind of a big nothing, right? Well, Your Honor, in this case, there's supposed to be extraordinary circumstances to even, like, to even exercise Well, I don't think the judge was saying that, you know, this guy bringing in a small amount of mushrooms that he didn't get charged with from Canada is like a vote in his favor. I thought the extraordinary circumstances were all the letters from people saying he's peaceful and nice, and this is for his amendment retaliation, right? Yes, Your Honor, that was the, but the judge was also considering, considering dangerousness and What's the standard of review for us on this MAP versus Reno determination, assuming it's still valid? Assuming it's still valid, we think that the standard of review, the standard of review is de novo, because De novo? Well, de novo on the legal question, but on the facts, there would be I mean, I guess the legal question is, is there such a thing as MAP v. Reno anymore? But what's the legal question other than that? The legal question is whether he would have, whether there are extraordinary circumstances The application of the legal standard to the fact, whether whatever the district court decided amounted to extraordinary circumstances that required police to preserve the habeas remedy. And that's denied? But whether given facts No, no, no, that's what I'm asking. In your view, is that, isn't that the standard? Effectively, we would always be applying in every single, I mean, when we look at criminal bail determinations, we're always looking at an application of the fact, of the law of the facts. Are you saying that this is somehow different, that this is a de novo thing? Or that in all those criminal cases where we review bail determinations every day, we just have it wrong, and we should be doing those de novo? Your Honor, Your Honor, the, there would be some deference on the facts of the district court here, but the legal question would be review de novo, whether there's extraordinary circumstances. All right, it is extraordinary circumstances that require police to preserve the habeas remedy. You know, here the district court did offer a bunch of opinions about politics and society. It would be a legal error if we decided that the legal standard required something about the detainee and not sort of those general considerations, like that might be a legal error, right? Or if we take the facts for granted and we don't, and the district court only said, it's not a flight risk and it's not dangerous, maybe that's not enough for extraordinary circumstances, that would be a legal question too, right? Yes, Your Honor, the government would maintain that you would, that there would be certain deference on the facts, but you would have to, if there was legal error in the result. In Mapp v. Reno, there's this footnote that says, you know, this is a mandatory detention, but if it were, you know, under 1226C, but if it were a discretionary detention under 1226A, we might not have the authority to release somebody on bail, right? Yes, Your Honor, that's correct. And here, this is a discretionary detention, right? Yes, this is. So then there'd also be the question as to whether the application of Mapp v. Reno to a discretionary detention complies with the jurisdiction stripping provision or the provision that says there's no judicial review of decisions of detainees. Yes, Your Honor, we think at this point, it's, we think at this point, 1252A bars review because he's seeking, he's seeking to challenge his removal proceedings and such, but he's also seeking to challenge the decision whether to detain or not, which is a discretionary decision that 1226A gives to the Attorney General. And, or then the Secretary of DHS, and also, and under 1226E, that's also, since that's discretionary, it would not be, not be reviewable. So we think that, we think that after the REAL ID Act, this is just not reviewable at all. And that after Citrino was wrong. Well, even after the REAL ID Act, I mean, you recognize that you could have habeas claims where the challenge to detention is independent of the removal proceedings, like conditions of confinement and whatever, right? Yes, Your Honor, we. Matt versus Reno applies to those kinds of cases. Yes, Your Honor, we maintain that, that under Second Circuit law, there is the. So after the REAL ID Act, the idea is that Matt versus Reno is just not the way you decide whether somebody should get bail pending removal proceedings, because we now have a different mechanism for reviewing removal proceedings. But if the habeas petition were legitimate, we might have the authority under Matt versus Reno to release somebody on bail pending habeas, right? If you were reaching a district or conditions of confinement claim or something of that sort, yes, that may still be permissible. So also in this case, this case also involves the same issues of 1252A and B9, as well as the 1252G issue that occurred, that Allstirk has. And we think that for the same reasons, as we've stated in the Allstirk briefing, we think that there's not habeas jurisdiction over his petition. And I'll note also that his petition also challenges the Rubio determination and challenges the reasons that he's even being removed at all. All right. So if the district court ultimately decided those questions in the context of the habeas petition and decided that Secretary Rubio's determination was a violation of the First Amendment, would that be preclusive of issues that will arise at the removal proceedings? Well, Your Honor, we think it could be, which is why this should not be, why the district court should not be allowed to go through and do this here, because Congress specifically created a system for raising these claims. And that's through the petition for review process. And raising claims about removal proceedings is supposed to wait for BIA review, Court of Appeals review, and starting with the immigration judge. Is there any material difference, in your view, in terms of the various 1252 preclusion sections between the Madawi and Allstirk cases? Is there any? I mean, because we've asked you a lot of questions. I don't want to put you through the paces again. But is there anything materially different about the way Mr. Madawi frames his relief as opposed to Ms. Allstirk that you think should arguably work differently? No, Your Honor. We think that they're functionally the same. And the one thing that we just wanted to make sure we preserved was that his petition also seeks to challenge the same reasons for his, his petition also seeks to, or his previous petition seeks to challenge those reasons. There is a difference in that there's no transfer order, and you do appeal the released order. I was more talking about the way they frame their prayer for relief. Actually, can I ask you about that? And I'll ask the others too. I'm looking at the prayer for relief. I guess it's J18. I understand that the habeas asks, among other things, you know, number six, order the release. I'll wait until you get there. It's page 18. Um, and I know, I think the gist of your argument, as I understand it, is still that there's a single basis that each petitioner brings forth to challenge both and equally the removal and the detention, in your view, since that's the same claim. They effectively are attacking the two of them as sort of a packaged deal. I was curious about whether, what's your view on things like number two and number three in their prayer for relief? Vacate and set aside respondents' unlawful policy of targeting non-citizens for removal based on First Amendment protected speech advocating for Palestinian rights, and vacate and set aside the Rubio determination. I was just kind of curious. I understand a habeas claim that says, release me. And the reason may be the Rubio determination is violative of the First Amendment or whatever. But I was curious as to what that even functionally means. Maybe this is more a question for the other side. What does it mean to vacate and set aside the Rubio determination? What does that mean in the context of a habeas? Is that like an ADA thing, or what is that, in your view? Your Honor, in the government's view, we're a bit confused about what that would mean beyond saying that the removal proceedings are invalid. Because functionally, if two or three was granted, the removal proceedings themselves may be not. I mean, maybe that goes to the third claim, which is talking about the violation of the Administrative Procedure Act or something. So maybe this is more than a habeas petition is sort of the answer, even though it's a captioned petition for the habeas corpus. That's fine. That's more maybe a question for the other side. I want to just ask about B-9 for just a second. Your adversary, other case, but I'm going to put them together for this purpose, since the arguments are functionally the same. Your adversary says, well, if it's a zipper clause, it only refers to final orders of  And that's, we should look at the preparatory language to the, to be generally, and it tells us that. Could you address just that claim? Yeah. Your Honor, of course. This zipper clause we actually think is broader than final orders. And I think the best language for that is that B-9 says no court shall have jurisdiction by habeas corpus or by any other provision of law to review any questions of law or fact arising from any action, the key word, taken or proceeding brought to remove an alien from the United States. And we think of the any action language suggests that this is not just about final orders. And in fact, A-5 talks about exclusive means of judicial review when there's a final order removal, right? That's correct, Your Honor. And that, and A-5 also says that notwithstanding any other provision of law, statutory or non-statutory. B-9 only applied once there's a final order of removal. It means that A-5 would be extraneous, right? Yes, Your Honor. That's correct. And then, I mean, if it is in fact a zipper clause that's meant to challenge all legal issues that arise from a final order of removal, if it actually didn't kick in until the administrative, the removal proceedings were done and ended in a final order of removal, you could have all sorts of collateral challenges, right? Until the administrative proceedings are done. Yes, Your Honor. And we think that this is fundamentally not what Congress intended to occur in the statute. The Congress was trying to prevent a bunch of pre-removal claims. So one difference between Madawi and Ozturk is the question that I was asking before about the administrative remedies, right? So Ozturk is eligible for an administrative bond hearing, but Madawi is not, right? That's correct, Your Honor. But he is eligible for a Joseph hearing, because he didn't see one, right? That's correct, Your Honor. He would have been able to have such a hearing. And again, yes, has not sought one. This moved very quickly. He was released very quickly. So I don't think they're from in the habeas proceedings. So I just don't think that there was much reason for him to go about that process. And that's a fundamental problem. If there is an exhaustion principle, is that an administrative remedy that a habeas petitioner would be required to exhaust? Yes, Your Honor. We think that if there is a habeas remedy, that petitioners would have to exhaust all of their remedies at the immigration judge level. Can I ask as a housekeeping matter, because I don't think I could fully absorb that this Ozturk's proceedings are happening out of Boston, and therefore will eventually be channeled, per se. Can you just confirm for me where Mr. Medaudi's proceedings are? Mr. Medaudi's proceedings are also in Massachusetts currently. Okay, same thing. If there's no more questions, thank you, Your Honor. Good afternoon. May it please the court. Michael Tan for Afalee Mohsen Medaudi, who's with us in court today, along with several faith leaders who support him. This case, like Ms. Ozturk's, is about whether you can seek habeas review when the government locks you up to censor your speech. And our position is the same as Ms. Ozturk's on jurisdiction and on exhaustion, that the INA preserves and the suspension clause and separation of powers guarantees habeas review of executive detention pending trial. And that's true even assuming some possible future overlap between the detention case and the removal case. That's just the price of our constitutional design. And it makes sense. Say you have the case with mistaken identity. So you agree that to the extent that the jurisdictional bars would prevent review of issues that are the justification for removal, that those provisions would be unconstitutional? I think if they operated here to prevent Mr. Medaudi from challenging his detention on habeas, which in his view was unlawful on day one, that would violate the suspension clause. Because at its core— And I guess, as Judge Gardini pointed out, the habeas petition does ask for a vacaner of the government's policies on removal and to end the removal proceedings. Does the habeas court have the authority to terminate the removal proceedings? Yes. So that's a separate question than the question before you here. So the habeas petition does challenge both his removal proceedings and his detention. But it does so separately. They present separate questions that are analytically distinct. There is an overlap. And that overlap is the government's extraordinary— Contours of your argument. Do you think that the habeas court could order the removal proceedings ended? So we are advancing that argument below. But that is not before you. We are not asking the court to reach that question here or reach that holding. And you don't need to. It very well may be that the district judge, Judge Crawford, will dismiss the removal challenges under the INA. He has specifically reserved that question. And he may do so for the very reasons we've been discussing today. All that's before you are the detention claims. And it's clear that the INA preserves habeas review of those claims. That's exactly what Congress was doing when it channeled removal claims to the petition for review of a removal order. And separate and apart from that, the suspension clause has to guarantee review of detention here. Just a few points that came up in my colleague's argument. So we did raise the suspension clause concerns in our brief. Separate from that, this court, of course, has an independent obligation to determine its own jurisdiction. And that includes the suspension clause. On the point of administrative remedies— So would that mean the suspension clause is about our jurisdiction? The suspension clause would provide habeas jurisdiction here. It's a guarantee of habeas jurisdiction, at least as a— Oh, you're saying instead of the jurisdictional bars, but to the extent we thought that it included jurisdiction. If it's unconstitutional, then I get it. Yes, Your Honor. I'm sorry. On this question of administrative remedies, this is a very important point here. There are no remedies for Mr. Medalli to exhaust. Or rather, any remedies would be— Sorry, I misspoke. You had the Joseph hearing. I misspoke. The Joseph hearing would be futile. So what the Joseph hearing would— Take one step back. What the regs do is exclude him from seeking a bond hearing before the immigration judge because of the Rubio determination. What the regs provide is the Joseph hearing. But all that hearing allows the IJ to do is to determine whether he's properly included under the relevant provisions. And what that provision says is, is he an alien who's described in Section 237A-4 of the Act? Which means somebody who's being removed because the Secretary of State has determined that his presence conflicts with foreign policy. Well, I think there will be very little dispute about whether Mr. Medalli— He is that, right? But your claim—you don't deny that he is that. You just think that the Rubio determination is unconstitutional. Right. But the question is whether it would be futile for him to exhaust the Joseph hearing. And the issue at the Joseph hearing is going to be whether he's described in this section of the Act. He is described in the section of the Act by dint of the Rubio determination. The Executive Office of Immigration will give guidance about consideration of constitutional claims. They seem to think that immigration adjudicators can consider as-applied challenges. So is it really clear that at a Joseph hearing, an adjudicator can't consider the idea that even though the government is purporting to deport him on that basis, that statute has applied to him as unconstitutional? Yes, Your Honor. I mean, at least in practice, this is how Joseph hearings operate. So the more common use of the Joseph hearing is for mandatory detainees, people detained under INA 236C, where the issue is whether you've been charged on a ground of removal that triggers your mandatory detention. It's usually a crime-based ground of removal that triggers your mandatory detention by operation of statute. And that's the question at the Joseph hearing. It's not a question into whether you're being detained for a permissible purpose, and it's certainly not an inquiry into whether you present a flight risk or danger. Of the statute, right? Yes, that's what a Joseph hearing is. So the government says, you know, you're an aggravated felon, right? Right. And that's an inquiry subject to mandatory detention. And you say, well, actually, that's not a categorically violent crime, so I don't actually qualify as an aggravated felon. That's the kind of thing that they would decide, right? Right. And here we're not disputing that he's subject to that. He's been, Mr. Medaille has been subject to that ground of removal under the statute. That's not the issue. But just like the aggravated felon who agrees, yes, I did commit, violate that statute, but that statute is not properly considered to be a categorically violent crime and therefore not an aggravated felony, you are making an argument that you are subject to the statute, but the application to you is impermissible, right? That's right. So that's the argument we're making. And that's a claim that has traditionally not been heard at a Joseph hearing. The issue at a Joseph hearing is whether you fall under the statute or regs. And I've never understood or I'm not aware of any case where a litigant has been able to successfully press a constitutional claim at the Joseph hearing. That's because the question at a Joseph hearing is whether you're properly included, classified under the relevant provision of the INA. Moving on to the Matt v. Reno question. So, Justice Nardini, in your question about the standard of review, the standard is clear. This court applies, quote, a deferential review to a district court's bail determination and will not reverse except for clear error. We cited cases on our brief like United States against Mathis. Those do arise in the criminal bail context. There aren't really any comparable cases on immigration bail. How transferable is that standard, or how transferred is that standard from the criminal context to the Matt v. Reno context? Yeah, so, sorry, Your Honor. I think the standard follows from the reasoning of Matt v. Reno, which of course held that the habeas court has the same inherent authority to release non-citizens pending the removal case as it does in criminal cases. And so it would follow that the same standard of review here, which is to treat them the same. You don't deny that to the extent that it implicates a legal question, that that's a de novo question, right? That's right. There's de novo review of legal questions. So, footnote in Matt v. Reno that says, well, this is a mandatory detention. If it were a discretionary detention, maybe we couldn't order bail. Like, to the extent that we think that makes a difference, that would be a legal question. Right. So, footnote 12 of Matt is actually a little more nuanced than that, Your Honor. So, footnote 12 was dealing with discretionary detention decisions for people who already had final removal orders. So, the statute at issue there was 8 U.S.C. 1231A6, I believe. But the footnote goes on to say, the case would be different if we were dealing with someone detained pending the removal case prior to entry of a removal order. But the reason why, because of the permission where Congress says there's no judicial review of a discretionary detention decision, right? I don't think Matt says that, Your Honor. So, then what's the reason why it would be different? I think that that person is differently situated for due process purposes, because they've gone through a final adjudication and have a final order. They're being detained in order to execute the removal. That's not the case here, where Mr. Medaille is very much still fighting his immigration case. And what about the question about extraordinary circumstances? So, the way we articulate Matt versus Reno is to say that substantial questions and extraordinary circumstances that make release necessary to preserve the habeas remedy, right? Here, I mean, the district court seems to think that because he's not dangerous or a flight risk, there's extraordinary circumstances. But doesn't it have to be more than that? So, the district court did find more than that. And specifically, the district court focused on the extraordinary First Amendment harm here, mainly detention to censor someone from their speech and a prior restraint, arguably the most serious and severe First Amendment harm there is. What the government did here— That's a substantial question, isn't it? But you're saying it goes to both prongs? It does go to both prongs, because silencing Mr. Medaille on day one of his detention was a now-or-never or irreparable harm. And keeping him in detention, absent an immediate remedy, would have defeated the purpose or defeated meaningful relief on the ultimate habeas petition. What the government did here was literally take Mr. Medaille out of his community, cut him off from his ability to engage in one of the most pressing debates in the day. So, that is certainly extraordinary. And that's what called for bail in these circumstances. The last point I wanted to make on bail, Your Honor, goes to this question of dangerousness. And I just want to make crystal clear, as Your Honors pointed out, Judge Crawford considered all of the evidence, the government's evidence, of so-called danger and found that Mr. Medaille is not a danger. And there's absolutely no clear error in that finding. The FBI thoroughly investigated the allegations, took no action on them, making this the case that would. So, what action would the FBI have taken if it thought that it was serious? That's maybe a question for the government. But I think Judge Crawford reasonably inferred that the FBI's decision to not act on these very seriously. Why is that inference reasonable? So, like, you're defending his argument that if these were serious allegations, the FBI would have done something. I'm not sure what it would have done. So, I'm asking you what it would have done if the allegations were serious. I think if the allegations were serious, it would have certainly continued an investigation and potentially pursued.  Maybe they didn't. They're not telling you. I mean, I have to say, that seems to be the one dramatic overstatement, I think, on your side. I mean, the fact that the FBI interviewed these people and then the district court concluded that if there was something, because I don't know why, the FBI is thorough and perfect and everything, that they would have detected that whatever his nefarious activity was, certainly he couldn't have gotten away with it, with the FBI on their tail, and that if nothing happened to him, it must be because the FBI concluded he was innocent and great. Or maybe, like many times, the FBI concluded he was absolutely up to no good and they couldn't prove it. So, that's actually what happens in most of these national security investigations. So, I mean, hang on. I mean, I'm just trying to. So, I don't see how anybody draws any inference that there's evidence of wrongdoing from him in the past. The FBI sniffed it and, you know, maybe they couldn't do anything. But that doesn't mean that he's innocent or good or nice. So, I still don't think there's clear error in the district court's reliance on the FBI. But I also want to underline, that's not the only thing the district court relied on. You look to Mr. Madawi's declaration, a sworn on penalty of perjury, where he firmly denied those allegations, and the larger record, right? Where we had letters of more than 150 people speaking to Mr. Madawi's character and work. I really commend these letters to the court. They're extraordinary. They make clear that he's an advocate for peace, a Buddhist leader who's committed to nonviolence. And that's further confirmed in this appeal by the amicus brief by the 26 Israeli citizens. So, he didn't just, to be fair to Judge Crawford, he didn't only draw the inference from the FBI, non-action, but also looked at the water. It seems to me that's a dramatically flawed inference to say, it's one thing to say the FBI looked at it, nothing happened. Therefore, I find that there is no probative value on the government side for this. But it's a completely different one to then make the further leap and say, because the FBI looked at it, there must be nothing there. That's going way too far. And in fact, very often what happens when the FBI can't find evidence of criminal wrongdoing is they turn around and say, well, maybe the best thing to do is get this guy removed from the country. Right, right. I think maybe here the inference is attenuated because they waited 10 years before that. Well, sure. And that was the other point I was going to make, Your Honor. So, separate and apart from the assessment of the FBI's non-action here, we're talking about 10-year-old allegations that are unsubstantiated hearsay. Yeah. And so, I think it's completely— If they decide that they have wonderful information of how dangerous your client is and they make a choice that national security is better served by keeping it secret, well, then that's the choice they have to live with. Yes, Your Honor. I'd also point out the U.S. attorney said the agent did not dispute Mr. Madawi's declaration. The FBI agent had issued, in this case, Agent Emens. And so, I think the judge made a contemporaneous assessment of bail risk here, and there's no clear error to that overall determination, unless there are further questions. Thank you. Governor McConnell. Thank you, Your Honor. A couple of things. First, that inference from non-FBI action, we think constitutes potentially a legal error. That—we do not think that that is something— How is it legal and not factual? So, Your Honor, in this kind of situation, we're dealing with a time when the FBI—when the district judge has taken an inference from— A factual inference about what the FBI thought. I mean, that's a fact, right? What did the FBI think about this guy? Particular people in the FBI, what did they think? That's a fact. Your Honor, we think the judge actually went further here, and the judge said if the FBI had substantiated the information, some action would have resulted. So, even if that's a fact, you think it's clearly erroneous? Correct, Your Honor. Even if it is a fact, we do think it's clearly erroneous. We also think that there are concerns with applying a clear error standard here in the Mapp v. Reno context generally, especially due to the government's—under cases like Trump v. Hawaii, the kind of limited—and the limited review that courts have and deference that the government is supposed to give to its immigration decisions, including, we think, the decision to detain. And if there are no further questions on the jurisdictional issues, I think that's all we have. All right. Thank you all. Very well argued on both sides. Very helpful. That is the last case to be argued on the calendar this afternoon, so I'm going to ask the deputy to adjourn court and take the matter under advisement.